The BOARD OF ZONING APPEALS OF TIPPECANOE COUNTY, Indiana, and City of West Lafayette, Tippecanoe County, Indiana, and Its Administrative Officer, Respondents-Appellants,

v.

Richard E. COCHRAN, Petitioner-Appellee.

No. 2-383A91.

Court of Appeals of Indiana, Second District.

Dec. 8, 1983.

Robert A. Mucker, Heide, Gambs & Mucker, Lafayette, for The Board of Zoning Appeals of Tippecanoe County.

Daniel A. Teder, Dickson, Reiling, Teder & Withered, Lafayette, for City of West Lafayette and its Administrative Officer.

Richard A. Boehning, Jill A.H. Andersen, Bennett, Boehning, Poynter & Clary, Lafayette, for Cochran.

RATLIFF, Judge (Writing by Designation).

## STATEMENT OF THE CASE

Following the denial of his application for an improvement location permit by the Tippecanoe County Board of Zoning Appeals (Board), Richard Cochran filed a writ of certiorari with the Tippecanoe Superior Court. The court reversed the Board and ordered the permit to be issued. From this decision the Board and City of West Lafayette now appeal.

We affirm.

## FACTS

On August 19, 1981, Cochran applied for an improvement location permit with City of West Lafayette, Indiana. If granted, the permit would have allowed Cochran to make improvements on four adjoining lots in a West Lafayette subdivision. The proposed improvements included removal of four existing structures and erection of a single multi-unit apartment building spanning all four lots. Cochran's request for a permit, however, was denied by the City.[1]

Following repeated amendments to his application, the City again denied Cochran's request; in essence, on grounds Cochran's proposed use of the property would violate various setback requirements contained in the City's unified zoning ordinance. West Lafayette, Indiana, Ordinance 8–65 (April 26, 1965).

Thereafter, Cochran appealed to the Tippecanoe County Board of Zoning Appeals pursuant to Indiana Code section 36–7–4–919 (1981 Repl.). The Board also denied the permit, but not on identical grounds. The City's denial of Cochran's request was premised upon its belief the proposed use of the property would violate both side yard and front yard setback requirements. The Board, however, reversed the City with respect to the latter, but nonetheless denied Cochran's request on grounds of the side yard restrictions. These restrictions, found in section 4.6(c) of the ordinance, essentially required a minimum of six feet between the owner's lot line which adjoined an abutting lot and any structure erected on the lot.

To reach its decision the Board was required to interpret and apply various terms employed in the ordinance which were relevant to the side yard restriction. Among the terms it interpreted was the word, "lot," which the ordinance defines as "an area of land, exclusive of street areas but including adjacent areas that are used as one, at least fifty percent of whose lot width abuts a street." Record at 876. Crucial to the present appeal, the Board construed the phrase "are used as one," found in the definition, to mean the use of a lot at the time a permit application was filed. Accordingly, inasmuch as the four lots upon which Cochran proposed to build the apartment building were being used separately and independently of one another at the time of his application, the Board determined the side yard setback restrictions would have to be observed between each of the lots. Hence, because Cochran's proposal failed to satisfy this requirement, the Board denied his application.

1. The zoning classification of the property upon which Cochran wished to make the improvements permitted such structures. Further, Cochran had previously been granted a permit for the construction of a similar apartment building on adjoining lots in the same subdivision.

Cochran then filed a writ of certiorari with Tippecanoe Superior Court seeking review of the Board's determination. Indiana Code section 36–7–4–1003 (1981 Repl.). The court, contrary to the Board, determined the phrase, "are used as one," to mean the proposed or intended use of the property in question, and not its use at the time of filing an application. Cochran's intention to use the four lots as a whole, the court concluded, permitted the entire area to be viewed as a single lot. Hence, the side yard setback requirements applicable when the lots were used separately, were inapplicable in light of Cochran's proposed use and could not be utilized to deny him a permit. Accordingly, the trial court reversed the Board's determination and ordered the permit to be issued.

From this reversal the Board and City of West Lafayette now appeal.

### ISSUES

Between the Board and City six separate issues have been presented for our review. We have, for purposes of clarity, rephrased and restated the issues as follows:

1. Was the trial court's interpretation and application of the phrase "are used as one" improper?

2. Did the trial court err in determining the side yard setback requirements abridged Cochran's constitutional right to erect a single structure on the four lots?

3. Did the trial court err by failing to address the issue of whether Cochran's proposed use of the property would violate the front yard setback requirements contained in the ordinance?

### DISCUSSION AND DECISION

*Issue One*

The appellants first argue the trial court erroneously interpreted the term "are used as one" as employed in the ordinance's definition of the word "lot." Essentially, they assert the trial court utilized an improper standard of review, thereby misinterpreting the key term, and incorrectly determined the City was without power to deny Co-

chran a permit based upon the use of the four lots at the time of his application. We disagree.

■ In reviewing the Board's decision, the trial court was guided by the provisions of Indiana Code section 36–7–4–1009.

"The court may determine the sufficiency of the statements of illegality contained in the petition, without further pleadings, and may make its determination and render its judgment with reference to the legality of the decision of the board of zoning appeals, on the facts set out in the return to the writ of certiorari. If the court determines that testimony is necessary for the proper disposition of the matter, it may take evidence to supplement the evidence and facts disclosed by the return to the writ of certiorari, but the review may not be by trial de novo. In passing on the legality of the decision of the board, the court may reverse, affirm, or modify the decision of the board brought up for review."

*Id.* Thus, the proper standard of review for the trial court was to determine whether the Board's decision was contrary to law. *Habig v. Harker,* (1983) Ind.App., 447 N.E.2d 1114, 1116; *Devon Civic League, Inc. v. Marion County Board of Zoning Appeals,* (1967) 140 Ind.App. 519, 524, 224 N.E.2d 66, 69, *trans. denied; Metropolitan Board of Zoning Appeals v. Froe Corp.,* (1965) 137 Ind.App. 403, 414, 209 N.E.2d 36, 41–42; *Board of Zoning Appeals of the City of Indianapolis v. American Fletcher National Bank and Trust Co.,* (1965) 139 Ind. App. 9, 12, 205 N.E.2d 322, 324, *trans. denied.* In the present case, we believe the trial court employed the proper standard of review and reached the correct result.

In the Board's findings of fact it interpreted the term "are used as one" to mean "the use or uses of the area of land to be included as a lot at the present time or when a building permit is requested, at the time application therefore is made." Record at 572. This conclusion, the Board admits, was reached after studying the defini-

tion of the word "used" in Webster's Dictionary.

The trial court, however, determined the meaning of the word "use" should be derived from the definition provided by the ordinance itself. Thus, the court found, the word use "means the employment or occupation of a building, structure or land for a person's service, benefit or enjoyment." Record at 881. Applying this definition, the court concluded that because Cochran's proposal envisioned the four lots be used as one for his "benefit and enjoyment," the entire parcel constituted a lot. Record at 143. Hence, the side yard setback requirements which would have to be maintained if the lots were used independently of one another were inapplicable in light of Cochran's proposed use.

■ We agree with the trial court; when language in a statute, or, as in the present case an ordinance, is defined by the statute, courts may not, through "blind adherence to definitions ... found in dictionaries," reach a contrary result. *Chicago & Eastern Illinois Railroad Co. v. Public Service Commission of Indiana,* (1916) 185 Ind. 678, 681, 114 N.E. 414, 415. Thus, we believe the trial court was correct in finding, as a matter of law, that the Board had misconstrued the meaning of the key term by ignoring the definition provided by ordinance and relying instead on a dictionary definition.

Furthermore, we find no merit in the appellants' argument that the trial court erroneously determined the City was without power to deny Cochran a permit based upon the setback requirements. Once a proper interpretation was given to the term "are used as one," and the four parcels of property were determined to constitute only one lot, it was clear the ordinance did not require Cochran to maintain side yard setbacks between the four lots. Therefore, the trial court was merely stating the obvious when it found the City had no authority to deny Cochran a permit based upon the side yard setback restrictions.

*Issue Two*

The appellants next assert the trial court improperly determined the setback requirements violated Cochran's constitutional right to erect a single structure on adjoining lots. In support of this argument the appellants direct our attention to the trial court's conclusion of law number eight which states: "To require side yard set backs [sic] at each platted lot line or where each present use ends interfere[s] with the Petitioner's right to build on contiguous parcels." Record at 143.

We fail to discern how this holding by the trial court is in any way premised upon a denial of Cochran's constitutional rights. Moreover, as the appellants concede, Cochran never raised a constitutional issue in the trial court proceedings, thus none were before it. Rather, as we view it, the trial court simply found the Board's interpretation and application of the ordinance was improper insofar as it would require Cochran to observe the side yard setback requirements applicable only when the lots were used separately. This holding in no way implicates constitutional issues and we therefore find no merit in this argument.

*Issue Three*

Finally, the City submits the trial court erred by failing to address the issue of whether Cochran's application could be denied on the basis of certain front yard setback restrictions. According to the City, the Board's reversal of the City's determination that Cochran's application could be denied on the grounds of the front yard restrictions was incorrect and should have been reversed by the trial court. As Cochran has argued, however, this issue is not before us in the instant case.

■ The Board's denial of Cochran's application was premised solely upon its belief that the proposed use of the property would violate the side yard setback restrictions. The Board expressly reversed the City's earlier determination that Cochran's application could also be denied on the basis of the front yard setback restrictions. In the trial court proceedings the only issue raised by any of the parties concerned the validity

of the Board's holding regarding the side yard setback restrictions. Accordingly, this was the only issue addressed by the trial court and the only issue now before us.

■ If the City had desired the trial court to address the issue of the Board's determination concerning the front yard restrictions, it too could have filed a writ of certiorari. Ind.Code § 36–7–4–1003. This it failed to do. Consequently, the only issue before the trial court was that raised in Cochran's writ. Indiana Code section 36–7–4–1009 (1981 Repl.); *Kessler-Allisonville Civic League, Inc. v. Marion County Board of Zoning Appeals,* (1965) 137 Ind.App. 610, 616, 209 N.E.2d 43, 47, *trans. denied.* Therefore, this issue has been waived.

Finding no error in the trial court's review of the Board's determination, we affirm.

Affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.