George W. Wheatley and Hubert S. Raitt, Doing Business as W. & R. Construction Company, Plaintiffs-Appellants, v. Moredock and Ivy Landing Drainage District No. 1, Monroe County, Illinois, et al., Defendants-Appellees, and Herman Klohr, et al., Intervening Defendants-Appellees.

Term No. 56–O–12.

Fourth District.

February 25, 1957.

Released for publication March 14, 1957.

6

Baker, Kagy & Wagner, of East St. Louis, for appellants; Leigh M. Kagy and John M. Ferguson, of East St. Louis, of counsel.

John R. Sprague, of Belleville, for appellees.

JUDGE CULBERTSON delivered the opinion of the court.

Plaintiffs, George W. Wheatley and Hubert S. Raitt, Doing Business as W. & R. Construction Company, filed an action to recover damages for breach of a written contract, and for a Writ of Mandamus to force the individual defendants to perform official acts required of them which it is alleged they are under a legal duty to perform. The action was instituted as against the drainage district and certain individuals as commissioners of the drainage district, and is in two counts. The first count is brought only as against the drainage district, and the second count is against the individuals as individuals and as commissioners of the drainage district, praying for Writ of Mandamus to require such individuals to perform the duties imposed upon them and in the contract entered into between plaintiffs and the drainage district, which was executed for the drainage district by the individual defendants.

A motion to dismiss was filed to both counts of the second amended complaint which is before us, and the motion substantially sets forth that insufficient statutory steps had been taken prior to the execution of the written contract between plaintiffs and the drainage district to authorize the drainage district to enter into a binding and valid contract such as is presented in this case, and also that there was a variance between the advertisement for bids and the contract, to which we will refer in the course of this opinion.

The Trial Court granted the motion to dismiss by the intervening defendants and determined that in-

7

sufficient statutory steps were taken prior to the execution of the written contract, and that plaintiffs therefore had no legal right to sue for breach of the written contract or to recover for the work performed by them for the drainage district and the intervening defendants.

It is of value to review specifically what was done to comply with the statutory provisions applicable to drainage districts as shown by the record.

The commissioners of the drainage district, on March 26, 1952, filed their verified petition for authority to repair ditches and for an assessment of $37,130 upon the lands benefited thereby. They caused the clerk of the County Court to duly publish notice as provided by law, to all persons interested, that the petition would be heard on April 21, 1952, at which time and place any person interested might appear and show cause why the prayers of the petition should not be granted. The commissioners of the drainage district appeared at the hearing in the County Court and presented the petition and an ample opportunity was given all persons, including intervening defendants, to be heard, and a hearing was, in fact, had at such time. The drainage district defended a motion by landowners for a rehearing and such motion was denied.

On April 21, 1952 the County Court of Monroe County, on the verified petition of the commissioners and after notice duly given by publication, entered a decree ordering that an assessment be spread upon the lands benefited by the ditches to be repaired; that payment of the cost of the work necessary for dredging, dragging and cleaning of dirt and debris from said drainage district; approving said work; ordering the cost to be apportioned and spread against the lands benefited; ordered that the commissioners prepare and file their commissioners' roll of assessment

8

of benefits and damages; and that proceedings be had thereon according to law.

Commencing with April 24, 1952, and continuing once each week thereafter for four successive weeks, the drainage district caused due legal publication of a notice requesting bids for completion of said work. The drainage district prepared and submitted bidders plans and specifications covering said proposed work. The district and commissioners received sealed bids from contractors, examined the bids, and awarded the work to the plaintiffs upon determination that the proposal was the lowest responsible bid received by the drainage district. The commissioners of the drainage district and their attorneys negotiated with the plaintiffs, and the Judge of the County Court of Monroe County, in working out the terms of the proposed agreement for completion of the work and secured the approval of the written contract by the county judge. The drainage district and the commissioners entered into the written contract with the plaintiffs on June 23, 1952, covering the proposed work and the spreading of the assessment and the payment to plaintiffs.

After the execution of the written contract and following the filing of this action, defendant drainage district and the commissioners, prepared and filed a roll of assessment of benefits and damages, on September 26, 1953.

■ ■ It is admitted by all parties to the action that it is well established that before a drainage district is authorized and empowered to enter into a contract, an assessment to provide the funds must be levied, and that assessments cannot be levied for a previously created indebtedness (Schaeffer v. Gerbers, 234 Ill. 468; Winkelman v. Moredock & Ivy Landing Drainage District No. 1, 170 Ill. 37).

■ The question presented in this action, however, has to do with the problem of when an assessment is

9

levied. The parties concede that in order for the contract before us to be valid and enforcible there must have been an assessment levied on the lands involved. In the case of O'Neall v. Coon Run Drainage and Levee District, 319 Ill. App. 324, the plaintiff had entered into an agreement with the defendant drainage district to furnish materials to be used in construction and repair of improvements. At the time the contract was entered into and delivery of materials was made by plaintiff, the defendant had not petitioned the County Court to levy the assessment and approve the work and did not do so until eight months after the date of the agreement. A motion to dismiss a complaint filed by the plaintiff in that case was properly sustained on the ground that no assessment could be levied for a past indebtedness. It is notable in such case that there had been no approval by the County Court of the work planned, nor was there an order authorizing or empowering the commissioners to enter into the contract or to spread the assessment, such as is true in the case before us, and there had been no order directing the commissioners to prepare their assessment roll of benefits. The Appellate Court in that case properly held that the contract was ultra vires and void. The court followed the precedent of Prange v. O'Meara, 368 Ill. 362, 365, and Corcoran v. Mud Creek Drainage District, 336 Ill. 211, 221, in which cases it was clearly established that the action of drainage district commissioners in entering into contracts fixing a liability on the district must be approved by the County Court, and that prior thereto the landowners have a right to be heard.

In Kreitzer, et al., v. Barnes, et al., 331 Ill. 549, the Supreme Court considered an appeal by landowners in a drainage district from an order of the County Court denying the landowners petition to abandon work and to abolish the district. In that case

10

the commissioners had petitioned the County Court and the County Court had entered an order authorizing certain work to be done in the district, and ordered an assessment as against the lands to pay the cost of the proposed work, as is true in the instant case. Thereafter the commissioners prepared and filed their assessment roll of benefits and damages, and entered into two contracts for the work. The date for hearing on the assessment roll was continued thereafter from time to time and prior to hearing the landowners sought to abandon the work and to abolish the district. The County Court denied such petition, and petitioners on appeal contended that the contracts entered into by the commissioners were invalid and void because the assessment roll of benefits and damages had not been *confirmed* at the time the contracts were executed and that, therefore, at the time the petition to abandon the work there was no contract for construction in the district. In effect, it was the contention in that case that the drainage district commissioners had no authority to enter into contracts for work before confirmation of the assessment roll. The Supreme Court did not agree with this contention and, while requiring that the commissioners had no power to create in advance an indebtedness and then levy an assessment to meet it, held that it was not necessary that the assessment roll of benefits and damages must be confirmed before the commissioners could enter into a valid contract for the work. It was pointed out by the court that after the County Court has determined the amount, by approval of the commissioners' report of probable total cost of the work, the commissioners are then required to spread an assessment in the amount found by the court to be necessary and proper. It was pointed out that the commissioners had no power to make an assessment for an amount greater than that fixed by the court as the estimate of the cost of the

11

work. The court said, specifically (at page 554), "The spreading of the assessment is but mathematical, which determines no right and affects no interest." The court in such case indicated that the order of the court approving the commissioners' estimate and ordering the making of the assessment roll against the lands in the district constitutes and completes the *levy* of the commissioners, subject to changes in amount as to specific property on a hearing before a jury. The court indicated that it has never been required or necessary to have an assessment roll confirmed before a contract could be entered into within the amount of the levy where the contract is to be paid out of the proceeds of the levy.

The only basic distinction between the present case and the Kreitzer case arises from the circumstance that the assessment roll of benefits had been prepared and filed by the commissioners, but not yet confirmed in the Kreitzer case, whereas in the instant case such assessment roll of benefits and damages had not yet been prepared and filed. It is our interpretation of the Kreitzer case that this step is not a basis for distinction since the court specifically determined that the spreading of the assessment is simply mathematical and it determines no right and affects no interest. The levy of the assessment involved in the instant case was completed when the County Court entered the decree more than sixty days before the contract was entered into. It is our conclusion that everything necessary had been done prior to the time of the execution of the contract, and since the contract has now been performed by plaintiffs they are entitled to recover if they are able to prove the allegations of the complaint.

Another issue raised on appeal which was considered on the motion to dismiss is that the second amended complaint fails to state a cause of action because the contract sued upon is at variance from the

12

advertisement for bids in that the contract covers 48,550 cubic yards of dirt removal in the main ditch, and the advertisement for bids covers 49,000 cubic yards. The notice for bids calls for cleaning of dirt and debris from the ditch in the amount of "approximately" 49,000 cubic yards. This notice was based upon the estimate of the commissioners for the amount of work necessary. The difference between the cubic yardage specified in the written contract and the cubic yardage estimated is less than 1 per cent of the total cubic yardage involved. The bids submitted, including plaintiff's bid, were based upon a certain amount of money per cubic yard of actual dirt removed. It is therefore apparent that the alleged variance is inconsequential and does not come within the meaning of the words "substantial and material" as used by the courts in setting aside such contracts on grounds of variance.

It is also contended by defendants that plaintiffs are not entitled to a Writ of Mandamus as prayed for in count two of the complaint for the reason that there is no clear and legal right in plaintiffs and a corresponding legal duty on part of defendants to pay the amount prayed for, to spread the assessment, or to prepare plans and make surveys.

The decree of the County Court clearly and precisely ordered that an assessment be spread upon the lands benefited, in specified amounts. That decree also directed the commissioners to prepare and file the commissioners' roll of assessment of benefits and damages in manner and form provided by statute, and that proceedings be had thereon according to law. This decree of the County Court created a clear and legal duty on part of the individual defendants and mandamus was the proper remedy under such circumstances. All material facts showing a legal obligation to perform the acts sought to be commanded are alleged in

13

the second amended complaint, and the legal right to the Writ of Mandamus and the obligation of respondents is clearly shown by the pleadings.

The court below should have overruled the motion to dismiss and this cause will, therefore, be reversed and remanded to the Circuit Court of Monroe County, with directions to require defendants to answer, and to proceed with a hearing of this cause on the merits.

Reversed and remanded with directions.

SCHEINEMAN, P. J. and BARDENS, J., concur.